1  Christopher Sproul (State Bar No. 126398)
   Jodene Isaacs (State Bar No. 226895)
2  ENVIRONMENTAL ADVOCATES
   5135 Anza Street
3  San Francisco, California 94121
   Telephone: (415) 533-3376, (510) 847-3467
4  Facsimile: (415) 358-5695
   Email:  csproul@enviroadvocates.com
5  Email:  jisaacs@enviroadvocates.com

6  Fredric Evenson (State Bar No. 198059)
   ECOLOGY LAW CENTER
7  P.O. Box 1000
   Santa Cruz, CA 95061
8  Telephone: (831) 454-8216
   Email: evenson@ecologylaw.com

9
   Attorneys for Plaintiff
10 ECOLOGICAL RIGHTS FOUNDATION

11   UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF CALIFORNIA
12

13 ECOLOGICAL RIGHTS FOUNDATION,

14              Plaintiff,
        v.
15

16 GRANITE CONSTRUCTION COMPANY and
   GRANITE CONSTRUCTION INCORPORATED,
17

18              Defendants.

19

20

21

22

23

24

25

26

27

28

Civil Case No. 5:15-cv-02923-EJD

[PROPOSED] CONSENT DECREE

(Federal Water Pollution Control
Act, 33 U.S.C. §§ 1251 et. seq.)

1    **WHEREAS**, Plaintiff Ecological Rights Foundation ("ERF") is a non-profit public

2    benefit corporation dedicated to the preservation, protection, and restoration of the environment,

3    the wildlife and the natural resources of all waters of California, including those of the San

4    Lorenzo River and Monterey Bay watersheds;

5    **WHEREAS**, Plaintiff alleges that Defendant Granite Construction Company ("Granite")

6    and Defendant Granite Construction Inc. (collectively, "Defendants") are the owners and

7    operators of the Felton Quarry facility located at 1800 Felton Quarry Road, Felton, California

8    ("the Facility") and have caused pollutants to be discharged to waters of the United States from

9    the Facility;

10   **WHEREAS**, Defendants dispute Plaintiff's allegation that Granite Construction Inc. is

11   the owner and operator of the Facility, as well as the allegation that Granite Construction Inc.

12   caused pollutants to be discharged to waters of the United States from the Facility;

13   **WHEREAS**, Granite's operations involve bulk aggregate mining, storage, offloading,

14   and sales activities;

15   **WHEREAS**, discharges of stormwater flow off the Facility at three main different

16   discharge points into tributaries of the San Lorenzo River;

17   **WHEREAS**, discharges from the Facility are regulated by the National Pollutant

18   Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water

19   Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-

20   03-DWQ and Order 2014-0057-DWQ ("Storm Water Permit") and the Federal Water Pollution

21   Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

22   **WHEREAS**, on April 20, 2015, ERF provided notice to Defendants of their alleged

23   violations of the CWA and of ERF intention to file suit against Granite and further provided

24   such notice to the Administrator of the United States Environmental Protection Agency ("EPA");

25   the Regional Administrator of EPA Region IX; the Executive Director of the California State

26   Water Resources Control Board ("State Board"); the Executive Officer of the California

27   Regional Water Quality Control Board, Region 3 ("Regional Board"); the U.S. Attorney

28   General, and the Defendants ("Notice Letter") as required by the CWA, 33 U.S.C. §

1   1365(b)(1)(A);

2       **WHEREAS**, on June 23, 2015, Plaintiff filed a complaint against Defendants in the

3   United States District Court, Northern District of California alleging ongoing violations of the

4   CWA (hereinafter "Complaint");

5       **WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint, and

6   maintains that its operations are in compliance with the requirements of the CWA and the Storm

7   Water Permit;

8       **WHEREAS**, this Consent Decree shall be submitted to the EPA and United States

9   Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c)

10  and 40 C.F.R. § 135.5;

11      **WHEREAS**, Plaintiff and Defendants have agreed that it is in the Parties' mutual

12  interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving

13  the allegations set forth in the Complaint without further proceedings and without any admission

14  of liability by Defendants; and

15      **WHEREAS**, all actions taken by Granite pursuant to this Consent Decree shall be made

16  in compliance with all applicable Federal and State laws and local rules and regulations.

17

18  **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND**

19  **ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

20

21  **I. GENERAL OBJECTIVES**

22      1.      The objectives of this Consent Decree are:

23          a.      To ensure that Granite continues to improve its efforts to comply with the

24  CWA;

25          b.      To ensure that Granite continues to use, implement, and improve ways,

26  means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from

27  the Facility; and

28          c.      To further the goals and objectives of the CWA.

1

## II. DEFINITIONS

2.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

"Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

"Day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

"Design Storm" means the 85th Percentile, 24 hour rain event as determined from the National Oceanic and Atmospheric Administration's Felton station rainfall records from 1995 to through 2015.  Based on the memorandum prepared by GSI Environmental attached as Exhibit 1, the Design Storm for the Facility will be 1.74 inches."Effective Date" means the effective date of this Consent Decree, which shall be the last day for EPA and DOJ to comment on the Consent Decree, i.e., the 45th day following these agencies' receipt of the Consent Decree, or the date on which these agencies provide notice that they require no further review, whichever occurs earlier.

## III. JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of the claims asserted by Plaintiff pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331, 1355, and 1367.  Venue is proper in this judicial district pursuant to section CWA §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c).  The parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree.

4.     The Complaint states claims upon which relief may be granted pursuant to

1    Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

2        5.    Plaintiff has standing to bring this action.

3  **IV. EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

4        6.    Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any

5  manner that Defendants' compliance with this Consent Decree will constitute or result in

6  compliance with any federal or state law or regulation.

7        7.    This Consent Decree is neither a permit nor a modification of existing permits

8  under any federal, state, or local law and in no way relieves Defendants of their responsibilities,

9  if any, to comply with all applicable federal, state and local laws and regulations.

10        8.    Compliance with this Consent Decree, including all monetary payments due

11  under this Consent Decree (including but not limited to the payment of any stipulated payments)

12  and the completion of all remedial measures required pursuant to this Consent Decree resolves

13  Plaintiff's civil claims for the violations alleged against Granite in this Action.

14        9.    Plaintiff's Release: Upon the Effective Date of this Consent Decree, and upon

15  payments to Plaintiffs and others as provided for herein, Plaintiff forever and with prejudice

16  dismisses and otherwise discharges any and all complaints, lawsuits, actions and other legal

17  avenues of recovery or prosecution against Granite Construction Inc. for the CWA claims

18  alleged in the Complaint. Plaintiff further agrees that Granite Construction Inc. is not the party of

19  interest and should not be and is not party to this Consent Decree. Upon the Effective Date of

20  this Consent Decree, and upon payments to Plaintiffs and others as provided for herein, Plaintiff

21  hereby releases Granite and its related companies (including but not limited to Granite

22  Construction Inc.), current and former officers, directors, employees, successors and assigns, and

23  its agents, attorneys, insurers and other representatives from, and waives all claims which arise

24  from the facts alleged in Plaintiff's Notice Letter and Complaint up to and including the

25  Effective Date of this Consent Decree.  Except for claims for Granite's failure to comply with

26  this Consent Decree, Plaintiff further releases Granite, and its related companies (including but

27  not limited to Granite Construction Inc.), officers, directors, employees, successors and assigns,

28  and its agents, attorneys, insurers and other representatives from all claims pertaining to alleged

1   violations of the CWA that may occur due to discharges of storm water from the Facility

2   between the Effective Date and the termination of this Consent Decree.

3       10.   Defendants' Release: Upon the Effective Date of this Consent Decree,

4   Defendants, on each of their own behalves and on behalf of their current and former officers,

5   directors, employees, members, and each of their successors and assigns, and their agents,

6   attorneys, and other representatives releases Plaintiff (and its current and former officers,

7   directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors

8   and assigns, and its agents, attorneys, and other representatives) from, and waives all claims

9   which arise from or pertain to this action, including all claims for fees (including fees of

10  attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which

11  could have been claimed arising out of the facts alleged in Plaintiff's Notice Letter and

12  Complaint and/or pursuit of this action up to the Effective Date.

13  **V. APPLICABILITY**

14      11.   The provisions of this Consent Decree apply to and bind Plaintiff and Granite

15  (collectively, "Parties"), including any successors or assigns.  The Parties certify that their

16  undersigned representatives are fully authorized to enter into this Consent Decree, to execute it

17  on behalf of the Parties, and to legally bind the Parties to its terms.  Granite Construction Inc. is

18  not subject to the terms of this Consent Decree other than those specifically stated herein.

19      12.   The Parties agree to be bound by this Consent Decree and not to contest its

20  validity in any subsequent proceeding to implement or enforce its terms.  By entering into this

21  Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter

22  arising out of the Action.  Nothing in this Consent Decree shall constitute an admission of any

23  fact or a waiver of any right unless specifically set forth herein.

24      13.   No change in ownership or corporate or other legal status of Granite or any

25  transfer of Granite's assets or liabilities shall in any way alter the responsibilities of Granite or

26  any of its successors or assigns thereof, under this Consent Decree.  In any action to enforce this

27  Consent Decree, Granite shall not raise as a defense the failure by any of its agents, servants,

28

1    contractors, employees, successors or assigns to take actions necessary to comply with this

2    Consent Decree, unless such actions were prevented by a force majeure.

3          14.      Except as otherwise provided in this Part, the sale or transfer of ownership or

4    operation of any portion of the Facility does not relieve Defendants of their obligations under

5    this Consent Decree.  Not later than thirty (30) days prior to sale or transfer of ownership or

6    operation of any portion of the Facility, Granite shall give written notice of this Consent Decree

7    to each purchaser or successor in interest.  Granite also shall give written notification to Plaintiff,

8    in accordance with Part XIV (NOTICES AND SUBMISSIONS), of the anticipated sale or

9    transfer of ownership or operation of the Facility at least thirty (30) days prior to the scheduled

10   date of such sale or transfer and may seek from the Court a modification of this Decree that

11   would transfer responsibility for compliance with some or all of these provisions to its successor.

12   The Court shall grant such request if the successor is ready, willing and able to fully implement

13   obligations the successor would assume under this Consent Decree.

14   **VI.    REMEDIAL MEASURES**

15       **A.    Storm Water Pollution Control Measures**

16          15.      In addition to maintaining the current BMPs at the Facility, Granite shall develop

17   and implement the BMPs identified herein, as well as any other BMPs necessary to comply with

18   the provisions of this Consent Decree and the Storm Water Permit. Specifically, Granite shall

19   develop and implement BMPs to prevent and/or to reduce contamination in storm water

20   discharged from the Facility sufficient to reduce the levels of pollutants in storm water

21   discharges below the levels in Table 1 attached as Exhibit 2 to this Consent Decree and/or to

22   make reasonable progress towards reducing the levels of pollutants in storm water discharges

23   below the levels in Table 1.

24          16.      The minimum BMPs to be developed and implemented are set forth below.

25          **a.    Berm Maintenance**

26                         i.   Makeshift Berms: Granite shall inspect all makeshift berms

27                              at the Facility within 90 days of the effective date of the

28                              Consent Decree to confirm the structural integrity of those

berms. Granite shall repair all damaged berms within three

working days to restore them to full functional integrity.

    ii.  Permanent Berms: Granite shall make good faith efforts to

promptly inspect and document its hardscape, permanent

berms this reporting year (July 1 through June 30). Upon

advance request by ERF, Granite shall make the

documentation available to ERF during site inspections

described in paragraph 37.

    iii.  To the extent weather permits, Granite shall make best

efforts to promptly repair any berms to restore their structural

integrity and shall document such efforts. That obligation

will terminate May 31, 2016. Granite shall do a

comprehensive inspection of these berms by July 1, 2016.

Granite shall complete any repairs shown to be necessary by

this comprehensive inspection by Sept. 15, 2016. Granite

shall make the documentation available to ERF upon request

**b.**    **Spill Cleanup:** Granite shall cleanup all spills of petroleum at the Facility (including excavation of any petroleum stained soil) and properly dispose of cleaned up petroleum materials (including any petroleum stained soils) in accordance with all applicable laws Granite further shall maintain appropriate cleanup kits within a short distance of areas where petroleum products may be spilled at the Site.

**c.**    **Boneyard Cleanup:** Granite agrees to consolidate all spare materials and equipment currently stored in various "boneyards" at the Facility to two designated areas at the Facility (which shall be mapped on the Facility Site Map), and provide drainage controls for those areas. Where reasonably feasible, Granite shall remove obsolete and broken equipment from the Facility.

**d.**   **Maintenance of Storm Water Channeling and Filtering Materials:**
Granite shall inspect the following Facility features at least monthly, and twice
monthly for such features within the portion of the Facility designated as Area C
(Asphalt Batch Plant) on the Facility Site Map: all non-permanent berms,
including fiber rolls, sorbing socks, straw waddles, and silt fences. On a quarterly
basis during such visual inspections, Granite shall photo document their visual
observations.  Upon advance request by ERF, such photographs will be made
available to ERF during site inspections described in paragraph 37.

**e.**   Granite shall make best efforts to repair or replace such storm water
control features that are damaged or defective within one working day before the
next forecasted storm event.

**f.**   **Motor Vehicle Spill Prevention**: Granite shall continue to perform the
vehicle maintenance and inspection BMPs specified in its Storm Water Pollution
Prevention Plan, which includes performance of regular vehicle inspections for
leaks by designated personnel and tracking of such inspections with logs.

**g.**   In addition, Granite shall place drip pans under all motor vehicles parked
and not in use at the Facility for more than a week and properly dispose of any
petroleum products captured in such drip pans.

**h.**   **Drainage Study/Holding Ponds Evaluation**: Within 120 days of the
effective date of the Consent Decree, Granite agrees to prepare a drainage study by
a California licensed engineer which will:

> **i.**   Evaluate treatment capacity of each of the
> holding ponds at the Facility relative to the storm water
> runoff that each holding pond will receive in the Design
> Storm. Granite shall reach conclusions concerning what
> percentage of the storm water runoff expected to be
> generated in a Design Storm each of the holding ponds
> will capture under different assumptions of antecedent

conditions (i.e., how much rainfall has preceded the
Design Storm and how full each of the holding ponds are
as a result of antecedent storms). Granite shall further
analyze and reach tentative conclusions concerning
whether the storm water that that will overflow these
holding ponds and be discharged off-site is expected to
have pollutant levels below Table 1 levels.

ii.      Identify all locations where storm water runoff
discharges offsite and confirm whether industrial storm
water runoff discharges to one of the holding ponds before
discharging offsite. If storm water runoff in certain areas
of the Facility is found to flow offsite without discharging
into the holding ponds, Granite shall install berms to
convey such storm water runoff to the holding ponds;

iii.      Assess the feasibility of moving the sampling
location for Outfall DP-3 to a more suitable location for
purposes of obtaining a representative sample of off-site
discharge of storm water. If no such more suitable
alternative sampling location is found to be feasible, the
parties agree that the present sampling location for this
Outfall is acceptable.

i.      **Super Sacks Maintenance**: At least once per week, Granite shall
inspect areas where "super sacks" of rubber material when such super sacks are
on-site at the Facility. If such super sacks are found to be leaking, Granite place
plastic tarps on top of the sacks and shall promptly clean up any spilled rubber
material found in these inspections.

j.      **Zinc and COD Contribution Evaluation**:  Granite shall perform a
study to evaluate whether the Facility is adding zinc to receiving waters or

1   increasing the COD levels in receiving waters. Granite shall prepare a Zinc and

2   COD Contribution Work Plan that specifies: (i) taking water samples within

3   Gold Gulch Creek at a location upstream of any storm water discharges from

4   the Facility (i.e., a location chosen to be representative of natural background

5   water quality in the creek) and analyzing such samples for zinc and COD, (ii)

6   taking water samples within Gold Gulch Creek at a location in the immediate

7   vicinity of where storm water discharges from the Facility enter the creek (i.e., a

8   location chosen to be representative of water quality in the creek as affected by

9   storm water discharges from the Facility) and analyzing such samples for zinc

10   and COD, (iii) analysis of and conclusions concerning whether storm water

11   discharges from the Facility affect zinc and COD levels in Gold Gulch Creek

12   above those listed in Table 2 attached as Exhibit 3.

13   **k.**      **ERF's Review of Zinc and COD Contribution Evaluation Work**

14   **Plan:** Plaintiff shall have thirty (30) days upon receipt of Granite's Zinc and

15   COD Contribution Evaluation Work Plan to provide Granite with comments.

16   Within fifteen (15) days of Granite's receipt of Plaintiff's comments on the

17   Work Plan, Granite shall accept and incorporate Plaintiff's comments

18   concerning revisions to the Plan or shall provide Plaintiff with a written

19   explanation if Granite refuses to develop and/or implement any of Plaintiff's

20   recommendations. Disputes regarding the adequacy of a particular

21   recommendation shall not impact the schedule for implementing any provisions

22   of the Plan not in dispute. Any disputes as to the adequacy of the Plan shall be

23   resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE

24   RESOLUTION).

25   **B.**      **Reduction of Pollutants in Discharges**

26   17.      Action Plan for Table 1 Exceedances: If the average of all analytical results from

27   all samples collected during each reporting year contains a level of contaminant above the levels

28   in the attached Table 1, Granite shall submit a plan for reducing and/or eliminating the discharge

1  of pollutants ("Action Plan"). In any year that an Action Plan is required, Granite shall submit it

2  to the Plaintiff by June 30 of the monitoring year when the samples were collected.

3        18.    In addition, if the <u>Zinc and COD Contribution Evaluation</u> referred to in paragraph

4  16 j shows that storm water discharges from the Facility add zinc or COD to receiving waters at

5  levels above those listed in Table 2, Granite shall include in an Action Plan measures for

6  performance of a source identification evaluation, i.e., steps taken (including storm water

7  sampling taken on-site and/or at the point of off-site discharge) to identify where at the Facility

8  storm water is picking up zinc and materials that elevate COD. Granite shall thereafter use the

9  results of the source identification to develop additional BMPs designed to reduce the

10  contribution of zinc or COD in Granite's storm water to below the levels listed in Table 2.

11        19.    <u>Action Plan Requirements</u>: Each Action Plan submitted shall include at a

12  minimum: (1) the identification of the contaminant(s) discharged in excess of the level(s) in

13  Table 1 or Table 2, (2) an assessment of the source of each contaminant exceedance, (3) the

14  identification of additional BMPs that Granite has chosen to implement, including treating

15  storm water prior to discharge from the Facility, to achieve compliance with the Table 1 and

16  Table 2 levels and/or make reasonable progress toward attainment of these levels, and (4) time

17  schedules for implementation of the proposed BMPs. The time schedule(s) for

18  implementation shall ensure that all BMPs are implemented as soon as possible, but in no case

19  later than October 1 of the same year the Action Plan is prepared. The following BMPs should

20  generally be evaluated to attain Table 1 and Table 2 Levels:

21          a.   <u>Hydraulic Controls</u>: installation of additional berms or equivalent structural

22               controls (if necessary to reduce or prevent storm water from flowing into or, other

23               than through the engineered storm water conveyance system or storm water

24               retention or treatment facilities).

25          b.   <u>Detention</u>: Additional on-site retention or detention of storm water to minimize

26               storm water discharges (overall or from specific areas) or to detain storm water

27               runoff for sufficient detention time so as to reduce pollutants in the discharge.

28          c.   <u>Visual "Track Off" To Public Streets</u>:  additional BMPs necessary to reduce or

1    prevent visual "track off" of material from the Facility onto public streets.

2    d.   Paving Additional Unpaved Areas: to the extent not already implemented, paving

3         appropriate portions of unpaved portions of the Facility where significant vehicle

4         traffic occurs and from which storm water discharges from the Facility.

5    e.   Treatment Systems: installing or improving treatment systems that would provide

6         more effective treatment of storm water prior to discharge than currently installed

7         systems, such as a fixed bed filter system or other improved filter system.

8    f.   Evaluation of BMPs:  replacing, rehabilitating, or eliminating existing BMPs,

9         taking into account the age of the BMPs involved or employed, the engineering

10        aspect of the application of various BMPs, and any adverse environmental impact

11        of the BMPs.

12   g.   Such other additional BMPs as Granite deems appropriate for evaluation.

13   20.   Action Plan Review: Plaintiff shall have thirty (30) days upon receipt of Granite's

14   Action Plan to provide Granite with comments. Within fifteen (15) days of Granite's receipt of

15   Plaintiff's comments on the Action Plan, Granite shall accept and incorporate Plaintiff's

16   comments of recommended additional BMPs into the Action Plan, or shall provide Plaintiff with

17   a written explanation if Granite refuses to develop and/or implement any of Plaintiff's

18   recommended additional BMPs. Disputes regarding the adequacy of a particular BMP shall not

19   impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes

20   as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution

21   provisions of Part XIII (DISPUTE RESOLUTION).

22   21.   Granite shall contact Plaintiff to request an extension of the deadline, if necessary,

23   to implement any structural BMPs requiring agency approval. Plaintiff's consent to Granite's

24   requested extension shall not be unreasonably withheld.

25   22.   When an Action Plan is completed and approved by Plaintiff or finalized pursuant

26   to Dispute Resolution, Granite shall revise its SWPPP and Monitoring & Reporting Plan

27   ("M&RP") as applicable within thirty (30) days to reflect the changes required by the Action

28   Plan.  Granite shall notify Plaintiff in writing when the Action Plan has been completely

1    implemented.  Granite shall implement any Action Plan approved pursuant to this paragraph as a

2    requirement of the Consent Decree.

3    **VII.    SITE MAPPING**

4         23.    <u>Site Mapping</u>: Within sixty (60) days of the Effective Date, Granite shall update

5    the Site Map for the Facility. The Site Map shall clearly identify the property boundaries, ground

6    type (pervious or impervious) on all portions of the Facility; berms, dikes, walls and all other

7    structures controlling the flow of surface water, all components of the Facility storm water

8    conveyance system, including but not limited to all storm water pipes, drop inlets, any storm

9    water storage or treatment infrastructure (as well is the capacity of such infrastructure) and all

10   other physical structures or items relevant under this Consent Decree.  The Site Map shall further

11   indicate the direction and pattern of storm water flows at and off the Facility and the locations of

12   nearby receiving waters.

13        24.    <u>Designated Discharge Points</u>:  Within sixty (60) days of the Effective Date, to the

14   extent not already implemented, Granite shall identify on the Site Map every location at which

15   storm water and non-storm water is known to be discharged or which may potentially be

16   discharged including all driveways ("Designated Discharge Points or Designated Discharge

17   Locations").  Each Designated Discharge Point or Discharge Location shall be numbered and

18   clearly labeled on the Site Map.

19        25.    <u>Designation of Storage Areas</u>:  The outdoor storage areas at the Facility where

20   materials used at the Facility are stored ("Material Storage Areas") shall be designated on the

21   Facility's Site Map.

22        26.    <u>Designation of Industrial Activity Areas</u>:  The portion of the Facility where

23   industrial activities occur, including but not limited to: bulk aggregate mining, loading and

24   offloading, motor vehicle and equipment maintenance, and asphalt production, shall be

25   designated on the Facility's Site Map as the "Industrial Activity Areas."

26        27.    <u>Pollutant Generating Activities</u>: The Site Map for the Facility shall fully describe

27   all industrial activities that generate dust, particulates or other pollutants that may be deposited

28   within the Facility's boundaries and identify their discharge locations and the characteristics of

1  such dust, particulate and other pollutants; and a description of the primary areas of the Facility

2  where dust, particulate and other pollutants would settle.

3      28.   Designation of All Sampling Locations: The Site Map shall set identify precisely

4  where storm water samples are to be collected.

5  **VIII.   SAMPLING, MONITORING, INSPECTION & REPORTING**

6      **A. Sampling Program**

7      29.   Granite shall collect storm water discharge samples from each Discharge Point

8  at the Facility according to the following sampling schedule:

9      a.   During the first and second year of this Consent Decree, and except as set forth

10          below in this paragraph, Granite shall collect a minimum of four storm water

11          samples per year from each Discharge Point at the Facility.  If three

12          consecutive samples from each of the Discharge Points results in pollutant

13          levels below the Tier One levels set forth in Table 1 for any parameter

14          sampled, Granite need not conduct additional analysis for such parameter in

15          future samples.

16      b.   During the third year of this Consent Decree, and except as set forth below in

17          this paragraph, Granite shall collect four storm water samples from each

18          Discharge Point at the Facility.

19      c.   Granite shall analyze each storm water sample collected for each of the

20          parameters listed on the Table 1 (i.e., pH, total suspended solids, and oil and

21          grease. Should operations change at the Facility, Granite shall conduct

22          sampling for any additional toxic priority pollutants listed in 40 C.F.R. §

23          131.38 likely to be present in Granite's storm water discharges in significant

24          quantities as a result of the changed operations.

25      d.   Where Granite discharges storm water into a storm drain inlet or catch basin,

26          Granite may choose to collect a sample below any insert or treatment system.

27          If Granite chooses not to collect a post-filtration or post-treatment sample, the

28          quality of storm water samples entering a storm drain inlet or catch basin

1   containing a fabric insert shall be considered the same as a sample collected

2   below the insert.

3       30.   While this Consent Decree is in effect, Granite shall take all storm water

4   samples within the first hour that flow is observed at the Discharge Points for each storm

5   event.  Sampling events shall occur at least 24 hours apart and be preceded by at least 48

6   hours without storm water discharges.

7       31.   If insufficient storm events meeting the above criteria have occurred in any

8   given year by January 31, to ensure that sufficient storm water samples are taken each

9   reporting year (July 1 through June 30), Granite shall take samples from any subsequent storm

10   event(s) subject only to the limitation that Granite shall take all storm water samples within

11   the first hour that flow is observed at the Discharge Points (*i.e.*, if employees arrive at the

12   Facility at the start of the business day during a rainstorm that commenced before they

13   arrived, they shall take storm water samples within one hour of arriving at the Facility. If rain

14   commences during the workday, employees shall take storm water samples within one hour of

15   the commencement of storm water runoff generated by such rainfall). If Granite does not

16   collect the required number of samples from the designated sampling locations due to lack of

17   discharge, Granite shall explain in the annual reports required by paragraph 40 why rainfall

18   was insufficient samples for Granite together the requisite samples.

19       32.   Granite shall have all storm water samples collected pursuant to this Decree

20   delivered to a California state certified environmental laboratory for analysis within the time

21   needed for analysis within laboratory method allowable hold times.  Granite shall direct the

22   laboratory to conduct analysis sufficient to detect individual constituents at or below the Tier

23   One Levels set forth in the attached Table 1.

24       33.   Granite shall provide to Plaintiff complete results from Granite's sampling and

25   analysis of storm water discharges to Plaintiff within fourteen (14) days of receipt of the

26   laboratory report from each sampling event.  Each time Granite receives sampling results,

27   Granite shall provide Plaintiff with a chart in digital or hardcopy form that summarizes the

28   results of all the samples and includes the Tier One and Tier Two Levels for comparison.  The

1   summary chart shall consistently present the sample summaries in micrograms per liter for all of

2   the parameters for which concentration values are provided.

3       34.    Granite agrees to install a storm water sampling platform at the location of

4   sampling outfall DP-1 within thirty (30) days of the Effective Date and thereafter take samples

5   from this location.

6   **B. Visual Observations**

7       35.    <u>Storm Water Visual Observations</u>: During the life of this Consent Decree, Granite

8   shall conduct visual observations at all Designated Discharge Locations during every rain event

9   that produces a discharge during operating hours while Granite personnel are on-site.

10      36.    During such storm water visual observations, appropriately trained Granite

11  employees shall monitor for the presence of visually observable oil sheens in storm water

12  discharges and/or discolored or turbid storm water discharges. Granite shall take representative

13  photographs of storm water discharges during all storm water sampling events, including

14  photographs of any visually observable oil sheens in storm water discharges and/or discolored or

15  turbid storm water discharges. Upon advanced request by ERF, Granite shall provide these

16  photographs to ERF during the site inspections described in paragraph 37.

17  **C. Compliance Monitoring**

18      37.    <u>Site Inspections</u>. Plaintiff and its representatives may conduct up to two site

19  inspections per year at Granite Facility during the life of this Consent Decree. The site

20  inspections shall occur during normal business hours and Plaintiff shall provide Granite with

21  forty-eight (48) hours notice prior to each site inspection. Granite shall make best efforts to

22  provide Plaintiff with forty-eight (48) hours notice prior to any scheduled storm water discharge

23  (i.e., planned opening of the gates that allow stored water from the Facility's holding ponds to be

24  released into receiving waters). This notice obligation shall terminate for the remainder of the

25  water year (i.e., the period between October 1 and May 31 each year) once Plaintiff has taken

26  one sample of discharge from the Facility. During the site inspections, Plaintiff and/or its

27  representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring

28  records, reports, and sampling data for the Facility. During the site inspections, Plaintiff and/or

1   its representatives may collect samples of discharges from the Facility. A certified California

2   laboratory shall analyze storm water samples collected by Plaintiff and copies of the lab reports

3   shall be provided to Granite within ten (10) business days of receipt. At the request of Granite,

4   the samples shall be split and one half provided to Granite so as to allow Granite to have its own

5   certified California laboratory analyze the samples, in which case Granite shall provide the

6   laboratory results to Plaintiff within ten (10) business days of receipt. Plaintiff and/or its

7   representatives shall adhere to all Granite's safety protocols during its site inspections.

8         **D. Cleaning, Maintenance, and Inspection Logs**

9         38.    During the life of this Consent Decree, Granite shall keep contemporaneous logs

10   documenting the performance of the inspections (and remedial measures, if any, performed in

11   response to the inspections) performed pursuant to paragraphs 16a, 16d, 16f, and 16i.  All logs

12   required by this Consent Decree shall indicate the staff who completed the cleaning,

13   maintenance, or inspection activity and the date the activity was performed. The logs shall

14   further include notes sufficient to describe the completed activity and any pertinent information

15   that the activity yielded (*e.g.*, such as whether BMPs are an adequate condition or whether the

16   Facility is free of oil, debris, or other conditions likely to lead to pollutant loading in storm water

17   discharges). The logs shall be made available to ERF at the time of any site inspection.

18         **E. Reporting**

19         39.    During the life of this Consent Decree, Granite shall provide Plaintiff with a copy

20   of any documents not uploaded to SMARTS (if any) pertaining to the General Permit submitted

21   to or received from the Regional Board or the State Board concerning the Facility, including all

22   documents and reports submitted to the Regional Board as required by the General Permit.

23   Documents and reports sent by Granite to the Regional Board or State Board shall be

24   electronically mailed to Plaintiff contemporaneously with submission to the Regional Board or

25   State Board.  Documents received by Granite from the Regional Board or State Board shall be

26   electronically mailed to Plaintiff within three (3) business days of receipt.

27         40.    Granite shall provide Plaintiff with reports on June 30 each year documenting

28   measures taken by Granite to comply with the Decree and providing Plaintiff with summary

1   tables of all storm water sample test results for the Facility and cleaning, maintenance, and

2   inspection logs prepared pursuant to paragraph 38. Granite shall further notify ERF within three

3   business days whenever it has uploaded storm water reports and/or other information such as

4   storm water sampling results to the State Board SMARTS online database. Granite need not

5   provide any separate report to ERF of any information Granite uploads to SMARTS.

6   **IX.   EMPLOYEE TRAINING**

7        41.   Within thirty (30) days of the Effective Date, Granite shall develop and

8   implement a training program, including any training materials needed for effective

9   implementation of the training program, to ensure (1) that there are a sufficient number of

10   employees delegated to achieve compliance with the Storm Water Permit and this Consent

11   Decree, and (2) that these employees are properly trained to perform the required compliance

12   activities ("Training Program"). At a minimum the Training Program shall familiarize all

13   employees at the Facility with the requirements of the Storm Water Permit and this Consent

14   Decree.

15        42.   The Training Program shall require specific training to include at least the

16   following:

17        a.   <u>Non-Storm Water Discharge Training</u>. Granite shall train all Facility employees

18           on the Storm Water Permit's prohibition of non-storm water discharges, so that

19           employees know what non-storm water discharges are, which can result from

20           improper draining of automobile fluids, and how to detect them and prevent them;

21        b.   <u>BMP Training</u>. Granite shall train all members of the Facility's pollution

22           prevention team on BMP implementation and maintenance to ensure that BMPs

23           are implemented effectively to prevent the exposure of pollutants to storm water,

24           to prevent the discharge of contaminated storm water, and to ensure the proper

25           treatment of storm water at the Facility;

26        c.   <u>Sampling Training</u>.  Granite shall designate adequate number of employees

27           necessary to collects storm water samples from each discharge location as

28           required by this Consent Decree and/or the Storm Water Permit. The training

1             shall include the proper sampling protocols, including chain of custody

2             requirements, to ensure storm water samples are properly collected, stored, and

3             submitted to a certified laboratory.

4        d.  <u>Visual Observation Training</u>. Granite shall provide training to all individuals

5             performing visual observations at the Facility pursuant to this Consent Decree

6             and/or the Storm Water Permit.

7      43.     Training shall be provided on an annual basis, or as otherwise required to ensure

8  compliance with the terms of this Consent Decree, by a private consultant or a representative of

9  Granite who is familiar with the requirements of this Consent Decree and the Storm Water

10  Permit. The training shall be repeated as necessary to ensure that all such employees are familiar

11  with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP

12  and M&RP. All new staff will receive this training before assuming responsibilities for

13  implementing the SWPPP and/or M&RP.

14      44.     Granite shall maintain training records to document compliance with this section,

15  and shall provide Plaintiff with a copy of these records within fourteen (14) days of receipt of a

16  written request. The Training Program shall be specified in the SWPPP.

17  **X.     STORM WATER POLLUTION PREVENTION AND MONITORING AND**

18  **REPORTING PLAN**

19      45.     Within ninety (90) days after the Effective Date of this Consent Decree, Granite

20  shall revise its SWPPP and its M&RP to:

21        a.  Incorporate the requirements of the Storm Water Permit, and this Consent Decree,

22             including but not limited to revisions to the SWPPP to specify performance of the

23             Remedial Measures referred to in Part VI (REMEDIAL MEASURES), *e.g.*, the

24             facility wide BMPs, structural BMPs, good housekeeping measures, and site

25             mapping specified in this Part VII;

26        b.  Identify the individuals responsible for compliance with the Storm Water Permit

27             and this Consent Decree including specifying which individual is responsible for

28             what area of compliance (*e.g.*, John Doe, collecting samples);

1       c.   Describe all BMPs and how they will be operated and/or maintained;

2       d.   Denote all actions taken to control the deposition of dust, particulate matter and

3            other pollutants at the Facility;

4       e.   Describe where and when storm samples are to be collected and explain why the

5            sample points are representative of off-site discharge and include a checklist that

6            must be used by trained Facility personnel when conducting the storm water

7            sampling required under the Storm Water Permit and/or under this Consent

8            Decree;

9       f.   Describe where and when visual inspections of the Facility are to be performed

10           and include a visual inspection checklist that must be used by trained Facility

11           personnel when conducting the visual observations required under the Storm

12           Water Permit and/or under this Consent Decree; and

13      g.   Describe the type, direction, and volume of vehicle traffic at the Facility.

14      46.    <u>Commenting on the SWPPP and M&RP Revisions</u>. Granite shall submit the

15  revised SWPPP and M&RP to Plaintiff for review and comment as soon as it is completed but in

16  any event no later than thirty (30) days after the Effective Date. Plaintiff shall provide comments

17  made on SWPPP and M&RP revisions, if any, to Granite within thirty (30) days of receipt of the

18  SWPPP and M&RP. Granite shall incorporate Plaintiff's comments into the SWPPP and M&RP

19  or shall justify in writing why any comment is not incorporated within thirty (30) days of

20  receiving Plaintiff's comments. Any disputes over the adequacy of the revised SWPPP and

21  M&RP shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE

22  RESOLUTION).

23      47.    <u>Additional Revisions to SWPPP and M&RP</u>. Granite shall revise the SWPPP and

24  M&RP if there are any changes in the Facility's operations, including but not limited to changes

25  to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting

26  from an Action Plan. Granite shall submit any revised SWPPP and M&RP to Plaintiff for review

27  and comment within five (5) days of completion. Plaintiff shall provide comments, if any, to

28  Granite within thirty (30) days of receipt of any revised SWPPP and M&RP. Granite shall

1   incorporate Plaintiff's comments into any revised SWPPP and M&RP, or shall justify in writing

2   why any comment is not incorporated within thirty (30) days of receiving comments. Any

3   disputes as to the adequacy of the SWPPP and M&RP shall be resolved pursuant to the Dispute

4   Resolution provisions of Part XIII (DISPUTE RESOLUTION).

5   **XI.     MITIGATION, FEES, AND COSTS**

6          48.     <u>Supplemental Environmental Project Funding</u>:  As mitigation of the violations

7   alleged in Plaintiff's Notice and Complaint, Granite shall pay the sum of $25,000 to the Rose

8   Foundation for Communities and the Environment for projects designed to advance water quality

9   or environmental evaluation and/or environmental restoration in the San Lorenzo River

10  watershed and/or Monterey Bay.  Within 30 days of the Effective Date, Granite shall tender this

11  payment to the Rose Foundation for Communities and the Environment.

12         49.     <u>Reimbursement of Fees and Costs</u>:  Granite shall reimburse Plaintiff in the

13  amount of $77,000 to help defray Plaintiff's investigation fees and costs, expert fees and costs,

14  reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at

15  the Facility, bringing these matters to Granite's attention, and negotiating a resolution of this

16  action in the public interest.  Such payment shall be made within fifteen (15) days of the

17  Effective Date.

18         50.     <u>Compliance Monitoring Funds</u>:  Granite shall pay to Plaintiff $4,000 per year for

19  costs and fees associated with monitoring Granite's compliance with this Consent Decree.

20  Monitoring activities include site inspections, review of water quality sampling reports, review

21  of annual reports, discussion with representatives of Granite concerning potential changes to

22  compliance requirements, water quality sampling, etc.  The first of such payments shall be made

23  within fifteen (15) days of the Effective Date. Subsequent payments shall be due on the year

24  anniversary of the Effective Date of this Consent Decree. Granite may pro rate the amount of the

25  last such payment to reflect the percentage of one year equal to the remaining life of the Consent

26  Decree (i.e., if only six months remains before the Consent Decree is to terminate, Granite need

27  only pay 50% of the $4000 sum). All payments pursuant to this paragraph shall be made payable

28  to the Environmental Advocates Attorney-Client Trust Account.

51.    Action Plan Payments: If Granite submits an Action Plan to Plaintiff as required by this Consent Decree, Plaintiff shall be entitled to submit to Granite an invoice for up to $2,500 in costs incurred by an expert retained by Plaintiff to review the Action Plan. Granite shall tender Action Plan payments within 30 days of receiving such an invoice via check made payable to the Environmental Advocates Attorney-Client Trust Account.

## XII.   STIPULATED PAYMENTS

52.    In the event Granite fails to submit to Plaintiff any document, report or other communication required under paragraph 39 of this Agreement, for any report more than five (5) days late, Granite shall pay a per day payment of Five Hundred Dollars ($500) commencing on the sixth (6th) day after the report due date.

53.    In the event Granite fails to complete a measure of specific performance as required by paragraphs 15 through 47 above, Granite shall incur a late payment of Five Hundred Dollar ($500) per day commencing on the sixth (6th) day after the date by which the measure was to be completed or implemented.

54.    If Granite fails to submit to any payments required under paragraphs 48 through 51 of this Consent Decree, Granite shall incur a Five Hundred Dollars ($500) per day payment for each day that Granite's payment continues to be late.

55.    Any stipulated payments are pursuant to this Part shall be paid to the Rose Foundation for Communities and the Environment within fourteen (14) days of the event that precipitated the Stipulated Payment liability.  Stipulated payments shall be used for projects designed to advance water quality or environmental evaluation and/or environmental restoration in the San Lorenzo River watershed and/or Monterey Bay.  Granite shall send Plaintiff notice of any such stipulated payments within seven (7) days of tendering such payments.

## XIII.   DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

56.    Dispute Resolution Process: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other

1  Party of a request for a meeting to determine whether a violation has occurred and to develop a

2  mutually agreed upon plan, including implementation dates, to resolve the violation.  If the

3  Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least

4  seven days have passed after the meet and confer occurred or should have occurred, either Party

5  shall be entitled to all rights and remedies under the law, including bringing a motion before the

6  District Court of California, Northern District, which shall retain jurisdiction over the Action for

7  the limited purposes of enforcement of the terms of this Consent Decree.  The Parties agree not

8  to object to an expedited hearing schedule on any Dispute Resolution motion if one of the Parties

9  requests one.

10       57.     Litigation Costs and Fees: Litigation costs and fees incurred in conducting meet

11  and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of

12  this Consent Decree, shall be awarded in accord with the standard established by Section 505 of

13  the Clean Water Act, 33 U.S.C. §1365 and case law interpreting that standard.

14  **XIV.   NOTICES AND SUBMISSIONS**

15       58.     Except as otherwise expressly provided in this Consent Decree, whenever under

16  the terms of this Consent Decree notice is required to be given or a report or other document is

17  required to be forwarded by one Party to another, it shall, to the extent feasible be sent to the

18  following individuals as electronic computer files at the e-mail addresses specified below.  If a

19  given document cannot be e-mailed, it shall be mailed by U.S. Mail to the following addresses.

20  Any change in the individuals designated by either Party must be made in writing to the other

21  Parties.

22  As to Plaintiff:

23       Fredric Evenson
         ECOLOGY LAW CENTER
24       P.O. Box 1000
         Santa Cruz, CA 95061
25       Telephone: (831) 454-8216
         Email: evenson@ecologylaw.com
26
         Christopher A. Sproul
27       Environmental Advocates
         5135 Anza Street
28

San Francisco, California  94121
Email:  csproul@enviroadvocates.com

As to the Defendant:

Richard Watts
General Counsel
Granite Construction
585 West Beach St.
Watsonville, CA  95076

Email:  Richard.Watts@gcinc.com

## XV.   PAYMENTS

59.    All payments to Plaintiff (other than payments of Supplemental Environmental Project funding pursuant to paragraph 48 and Stipulated Payments pursuant to Part XII) shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payments shall be sent via certified mail, return receipt requested, to the following address:

Christopher A. Sproul
Environmental Advocates
5135 Anza Street
San Francisco, California  94121

60.    All Supplement Environmental Project funding pursuant to paragraph 48 and Stipulated Payments pursuant to Part XII shall be made by check payable to the Rose Foundation for Communities and the Environment. Such payments shall be sent via certified mail, return receipt requested, to the following address (with notice to the Plaintiff that such payments have been sent):

Tim Little
Rose Foundation for Communities and the Environment
1970 Broadway, Suite 600
Oakland, California  94612-2218

## XVI.   MISCELLANEOUS PROVISIONS

61.    **Execution in Counterparts:**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

62.   **Severability:**  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

63.   **Construction:**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

64.   **Integrated Consent Decree:**  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

65.   **Facsimile Signatures:**  Signatures of the Parties transmitted by facsimile shall be deemed binding.

66.   **Force Majeure:**  No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, natural catastrophe, and restraint by court order or public authority.  A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

67.   The parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

## XVII. EFFECTIVE AND TERMINATION DATES

68.   Within three (3) days of the final signature of the Parties, Plaintiff shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period

1    pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Court shall not enter its judgment

2    on consent until the expiration of this review and comment period.  If EPA or DOJ requests or

3    suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form

4    presented, the Parties shall within ten (10) days meet and confer on whether to revise this

5    Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ

6    and/or otherwise to accommodate EPA or DOJ's objections.  If the Parties do not mutually agree

7    to any such revisions or modifications, the Parties shall so notify the Court and request entry of

8    the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in

9    the form presented, the Parties will attempt in good faith to agree to revisions of this Consent

10   Decree necessary so that it is acceptable to the Court.

11        69.     The Effective Date of this Consent Decree shall be the last day for EPA and DOJ

12   to comment on the Consent Decree, i.e., the 45th day following these agencies' receipt of the

13   Consent Decree, or the date on which these agencies provide notice that they require no further

14   review, whichever occurs earlier.

15        70.     This Consent Decree shall terminate on July 31, 2018, provided that Granite has

16   made all monetary payments owed under the Consent Decree and there is no pending Dispute

17   Resolution proceeding pursuant to the provisions of Part XIII (DISPUTE RESOLUTION). If

18   Granite has not made all monetary payments owed under the Consent Decree or if there is a

19   pending Dispute Resolution proceeding, the Consent Decree shall be extended until Granite has

20   made all monetary payments owed under the Consent Decree and all pending Dispute Resolution

21   proceedings have been resolved.

22        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the

23   date first set forth above.

24

25   **IT IS SO ORDERED:**

26   Date: _____          _____

27                                       Honorable Edward J. Davila
                                         UNITED STATES DISTRICT COURT JUDGE
28                                       NORTHERN DISTRICT OF CALIFORNIA

1

2  APPROVED AS TO FORM:

3                                      ENVIRONMENTAL ADVOCATES

4

5  Dated: _____ 2016         By: _____

6                                          Christopher Sproul
                                           Attorney for Plaintiff
7

8  Dated: 2/19 _____ 2016         By: _____

9                                          Thomas Vandenburg
                                           Attorney for Defendants
10

11 APPROVED AS TO CONTENT:

12

13 Dated: _____ 2016         By: _____

14                                         James Lamport,
                                           Ecological Rights Foundation
15

16 Dated: 2/16 _____ 2016         By: _____

17                                         Martin P. Matheson
                                           Granite Construction Company
18

19 Dated: 2/16 _____ 2016         By: _____

20                                         Martin P. Matheson
                                           Granite Construction Inc.
21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 1 - GSI Design Storm Memo**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 2**

**Table 1.  Limits for Facility Discharges**

**Table 1. Limits for Facility Discharges**

| Contaminant | Limit |
| --- | --- |
| | *Applicable Basin Plan value (salt or freshwater dependent)* |
| Oil and grease | 15 mg/L |
| Total Suspended Solids | 100 mg/L |
| | |
| | |
| | |
| pH | 6-9 units |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 3**

**Table 2.  Limits for Facility Contribution above Background**

1
2
3
**Table 2. Limits for Facility Contribution above Background**
4

| Contaminant | Limit above Background |
|---|---|
| Total Recoverable Zinc | California Toxics Rule Criteria for Freshwater Aquatic Life[1] |
| Chemical Oxygen Demand | 120 mg/l |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[1] The zinc limit will be based on Federal Register/Vol. 65, No. 97/Thursday, May 18, 2000/Rules and Regulations, Page 31717. Because the allowable concentration for zinc is dependent of the hardness of the receiving water, the upstream/downstream zinc contribution evaluation will include collecting and analyzing downstream samples for hardness and the Table 2 value for zinc will be calculated based on the measured hardness of the receiving water.

1

2   APPROVED AS TO FORM:

3                                          ENVIRONMENTAL ADVOCATES

4

5   Dated: 2/19        2016              By: Christopher Sproul

6                                          Christopher Sproul
                                           Attorney for Plaintiff
7

8   Dated: 2/19        2016              By:
9                                          Thomas Vandenburg
                                           Attorney for Defendants
10

11  APPROVED AS TO CONTENT:

12

13  Dated:  2/29  2016                   By:
14                                         James Lamport,
                                           Ecological Rights Foundation
15

16  Dated: 2/16        2016              By: V Martin P. Matheson
17                                         Martin P. Matheson
                                           Granite Construction Company
18

19  Dated: 2/16        2016              By: Martin P. Matheson
                                           Martin P. Matheson
20                                         Granite Construction Inc.

21

22

23

24

25

26

27

28

Case No. 5:15-cv-02923-EJD              Page 27              [Proposed] Consent Decree